# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued October 8, 2013          Decided January 10, 2014

No. 12-5267

VERN MCKINLEY,
APPELLANT

v.

FEDERAL HOUSING FINANCE AGENCY,
APPELLEE

Appeal from the United States District Court
for the District of Columbia
(No. 1:10-cv-01165)

*Michael Bekesha* argued the cause. With him on the briefs was *Paul J. Orfanedes*.

*Steve Frank*, Attorney, U.S. Department of Justice, argued the cause for appellee. With him on the brief were *Stuart F. Delery*, Assistant Attorney General, *Ronald C. Machen Jr.*, U.S. Attorney, and *Leonard Schaitman*, Attorney.

Before: GARLAND, *Chief Judge*, and ROGERS and BROWN, *Circuit Judges*.

Opinion for the Court filed by *Chief Judge* GARLAND.

GARLAND, *Chief Judge*:  Appellant Vern McKinley seeks attorneys' fees following his largely unsuccessful attempt to obtain documents from the Federal Housing Finance Agency under the Freedom of Information Act.  Although the district court doubted that McKinley was eligible for fees, it determined that, even if McKinley were *eligible*, he was not *entitled* to attorneys' fees.  We review such a determination only for an abuse of discretion.  Because we find none, we affirm the district court's denial of fees.

I

Vern McKinley is a "consultant, legal advisor[,] regulatory policy expert," and author "on financial sector issues." Appellant's Br. 3.  In May 2010, he filed the Freedom of Information Act (FOIA) request, *see* 5 U.S.C. § 552(a)(3)(A), that led to the present controversy.  In that request, he sought from the Federal Housing Finance Agency (FHFA) "any and all communications and records concerning . . . how the FHFA and the Department of the Treasury determined that conservatorship," instead of receivership, "was the preferred option"  for addressing the unstable condition of the Federal National Mortgage Association ("Fannie Mae") and the Federal Home Loan Mortgage Corporation ("Freddie Mac") in early September 2008.  *McKinley v. Fed. Hous. Fin. Agency*, 789 F. Supp. 2d 85, 87 (D.D.C. 2011) (citation and internal quotation marks omitted); *see also* James B. Lockhart, Director, Fed. Hous. Fin. Agency, Statement (Sept. 7, 2008) (announcing that, in order to "address[] safety and soundness concerns," the agency "has placed Fannie Mae and Freddie Mac into conservatorship").

In response to McKinley's request, the FHFA searched for and, by July 2010, identified three documents that came within the terms McKinley had specified.  *McKinley*, 789 F. Supp. 2d

at 87. McKinley sought disclosure of just two of the responsive documents. *Id.* at 88. According to the "*Vaughn* index" prepared by the agency to describe the documents,[1] the first of these was a three-page "[u]ndated draft chart containing discussion of the features, strengths and weaknesses" of a receivership and a conservatorship. Declaration of Frank R. Wright, Attachment A, Final *Vaughn* Index. The second was a ten-page "August 18, 2008 draft memorandum on options for addressing a troubled regulated entity." *Id.* The FHFA did not find final versions of either document in its files. *Id.* Upon providing a description of the two documents, the agency notified McKinley of its decision to withhold them. The documents, the FHFA said, were protected against disclosure by both the deliberative process privilege and the attorney work-product privilege. *See* 5 U.S.C. § 552(b)(5) (authorizing the withholding of "intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency").

McKinley, who had filed suit before the FHFA completed its search, contested the asserted exemptions in the district court. On June 7, 2011, the court ruled that the agency had properly invoked the deliberative process privilege because the documents were both "predecisional" and part of the deliberative process, and their disclosure would necessarily "harm an agency's decisionmaking process" by stifling internal agency debate. *McKinley*, 789 F. Supp. 2d at 88 (quoting *McKinley v. Bd. of Governors of Fed. Reserve Sys.*, 647 F.3d 331, 339 (D.C. Cir. 2011)) (internal quotation marks omitted). The court went on, however, to remind the FHFA that the deliberative process privilege does "not protect documents in their entirety" and that, "if the government can segregate and disclose non-privileged factual information within a document,

---

[1] *See Vaughn v. Rosen*, 484 F.2d 820, 827 (D.C. Cir. 1973).

it must." *Id*. at 89 (quoting *Loving v. Dep't of Def.*, 550 F.3d 32, 38 (D.C. Cir. 2008)) (internal quotation marks omitted). This meant that the propriety of the agency's decision to bar disclosure of the documents in their entirety turned on its second assertion of privilege: the attorney work-product privilege. Unlike the deliberative process privilege, the latter "does not require the segregation of disclosable material." *Id.* (citing *Judicial Watch*, *Inc. v. Dep't of Justice*, 432 F.3d 366, 371 (D.C. Cir. 2005)).

After reviewing the two documents in camera, the district court concluded that the work-product privilege did not apply to either document because neither was "prepared in anticipation of litigation." *McKinley v. Fed. Hous. Fin. Agency*, No. 10-1165, slip op. at 2 (Aug. 26, 2011) (quoting FED. R. CIV. P. 26(b)(3)(A)) (internal quotation marks omitted). Consequently, the court ordered the FHFA to disclose all portions of the documents "reasonably segregable from the material . . . protected by the deliberative-process privilege." *Id.* at 4. The FHFA complied, producing heavily redacted versions of both documents. *See* Joint Status Report, Attachment A (Sept. 16, 2011). Thereafter, the district court granted the agency's motion for summary judgment, finding that the FHFA had satisfied its obligations under FOIA. *McKinley v. Fed. Hous. Fin. Agency*, No. 10-1165, 2012 WL 1415518, at *2-3 (Jan. 25, 2012).

McKinley then moved for attorneys' fees. On June 27, 2012, the district court denied the motion. *McKinley v. Fed. Hous. Fin. Agency*, No. 10-1165, slip op. at 4-6 (June 27, 2012) (hereinafter *Attorneys' Fees Opinion*). The court first expressed "serious doubts" about whether McKinley was even eligible for fees under FOIA. *Id.* at 4. FOIA permits the award of attorneys' fees to plaintiffs who have "substantially prevailed," 5 U.S.C. § 552(a)(4)(E)(i), and, although the "FHFA did turn over additional pages . . . pursuant to a court order," the court

doubted whether the receipt of two heavily redacted documents "amount[ed] to 'substantially' prevailing." *Attorneys' Fees Opinion*, slip op. at 4. The court found that it was unnecessary to address that question, however, because it determined that McKinley was not entitled to fees even if he were eligible for them. *Id.* at 6.

II

To obtain attorneys' fees under FOIA, a plaintiff must satisfy two requirements. First, he must be eligible for fees, which requires that he "substantially prevail" as defined by 5 U.S.C. § 552(a)(4)(E)(ii). Second, an eligible plaintiff must demonstrate that he is entitled to fees. *See Cotton v. Heyman*, 63 F.3d 1115, 1117 (D.C. Cir. 1995). On appeal, McKinley challenges the district court's reasoning with respect to both requirements.

We find the plaintiff's challenge to the district court's treatment of the first requirement perplexing. As should be apparent from our recitation of the district court's opinion, the court could not have incorrectly decided the question of eligibility because it did not decide the issue at all. Rather, it assumed arguendo that McKinley satisfied the eligibility requirement and concluded that he nonetheless failed to satisfy the entitlement requirement. The district court's perfectly appropriate decision not to decide a question it did not have to decide did not disadvantage McKinley in any way. *Cf. Earle v. Dist. of Columbia*, 707 F.3d 299, 304 (D.C. Cir. 2012) ("In our circuit it is a venerable practice, and one frequently observed, to assume *arguendo* the answer to one question . . . in order to resolve a given case by answering another and equally dispositive one." (citation and internal quotation marks omitted)). If McKinley has a claim on appeal, then, it is limited to his challenge to the court's determination that he was not

entitled to attorneys' fees. We therefore move directly to that question.

This circuit has long applied a multi-factor standard for evaluating whether a plaintiff who is eligible for attorneys' fees is also entitled to such fees. *See, e.g.*, *Nationwide Bldg. Maint., Inc. v. Sampson*, 559 F.2d 704, 712, 714 (D.C. Cir. 1977). Four non-exclusive factors typically govern the entitlement inquiry: "(1) the public benefit derived from the case; (2) the commercial benefit to the plaintiff; (3) the nature of the plaintiff's interest in the records; and (4) the reasonableness of the agency's withholding" of the requested documents. *Tax Analysts v. U.S. Dep't of Justice*, 965 F.2d 1092, 1093 (D.C. Cir. 1992); *see Davy v. CIA*, 550 F.3d 1155, 1159 (D.C. Cir. 2008). In practice, we have often combined the second and third factors into a single factor assessing whether a plaintiff "has 'sufficient private incentive to seek disclosure'" of the documents without expecting to be compensated for it. *Davy*, 550 F.3d at 1160 (quoting *Tax Analysts,* 965 F.2d at 1095). We review the district court's appraisal and balancing of those factors solely for abuse of discretion. *Id.* at 1158; *see Brayton v. Office of the U.S. Trade Representative*, 641 F.3d 521, 524 (D.C. Cir. 2011).

The first factor considers the significance of the contribution that the released information makes to the fund of public knowledge. *See Cotton*, 63 F.3d at 1120. The district court found that this first factor "strongly counsels" against awarding fees, reasoning that the two documents McKinley ultimately obtained were so heavily redacted that they contributed only "scant" information to the public record. *Attorneys' Fees Opinion*, slip op. at 4. We detect no abuse of discretion in that finding.

Of the thirteen redacted pages that the FHFA produced, McKinley draws our attention to just three unredacted phrases

in the first document that he claims contribute to the fund of public knowledge: "public perception," "unsafe or unsound practices," and "labor intensive." He maintains that those phrases publicly disclose, for the first time, the considerations that played a role in the agency's decision to place Fannie Mae and Freddie Mac into conservatorships. Appellant's Br. 16. But, in context, it is not at all clear what those phrases mean. The first document is a table with a "topic" column and two side-by-side columns concerning receiverships and conservatorships respectively. *See* Joint Status Report, Attachment A. On the face of the document, the three phrases appear to be nothing more than boilerplate terms used to compare the strengths and weaknesses of any receivership and any conservatorship in any case. Moreover, because the phrases are contained in a document marked "draft," it is not clear that they played a role in the agency's final decision. Nor does McKinley argue that, even if "not of immediate public interest," the disclosed information "nevertheless enables further research ultimately of great value and interest," *Davy*, 550 F.3d at 1162 n.3.[2]

---

[2] With respect to the second document, McKinley does not draw our attention to any unredacted text. Instead, he points to the date of the document (August 18, 2008) as providing a public benefit, contending it shows that the FHFA did not begin to analyze the condition of Fannie Mae and Freddie Mac until three weeks before they were placed into conservatorship. But the date of the document cannot show what McKinley contends because the other two documents identified by the FHFA in response to McKinley's FOIA request (the three-page draft that the FHFA produced and the third document that the agency identified but McKinley did not request) were undated. *See* Final *Vaughn* Index. Nor is creating a document the only way in which an agency can begin to analyze an unstable financial situation.

The second and third entitlement factors, considered together, address whether the plaintiff had a "sufficient private incentive" to pursue his FOIA request even without the prospect of obtaining attorneys' fees. *Davy*, 550 F.3d at 1160 (citation and internal quotation marks omitted). In the district court, the agency argued that McKinley's work as a regulatory policy expert gave him a commercial incentive to seek disclosure of the documents. *Attorneys' Fees Opinion*, slip op. at 5. McKinley argued that he had no commercial incentive and that his interest was purely academic. *Id.* On appeal, he maintains that his academic interest put him in the same position as the plaintiff in *Davy*, a case in which we held that the district court abused its discretion by concluding that the plaintiff's "scholarly interest" "weighed against" him in the award of fees. 550 F.3d at 1161-62.

Even if we assume arguendo that McKinley has the same status as Mr. Davy -- an assumption we make to avoid deciding a question we need not decide -- *Davy* does not help McKinley's case. Here, the district court did not conclude that the second and third factors "weighed *against*" the award of fees. *Davy*, 550 F.3d at 1162 (emphasis added). Rather, it found that they "neither strongly support . . . nor counsel against" the award of fees. *Attorneys' Fees Opinion*, slip op. at 5. This conclusion is neither inconsistent with *Davy* nor an abuse of discretion. The same is true of the court's further finding that, "when viewed in relation to the lack of a quantifiable public benefit, the [two] factors do *little* to advance Plaintiff's position." *Id.* (emphasis added).

The fourth and final factor "considers whether the agency's opposition to disclosure had a reasonable basis in law" and "whether the agency had not been recalcitrant in its opposition to a valid claim or otherwise engaged in obdurate behavior." *Davy*, 550 F.3d at 1162 (citation and internal quotation marks

omitted). McKinley concedes, as the district court found, that the FHFA's opposition to disclosure was neither legally unreasonable nor obdurate. *See* Appellant's Br. 18-19 ("McKinley does not dispute that FHFA had a colorable or reasonable basis for withholding the information."); *cf. Chesapeake Bay Found., Inc. v. Dep't of Agric.*, 11 F.3d 211, 216 (D.C. Cir. 1993) (holding that "the Government need only have 'a colorable basis in law' for the court to consider the 'reasonable basis in law' factor in determining a FOIA plaintiff's entitlement to attorneys' fees" (citation omitted)).

The district court pointed out that it had "countenanced the [agency's] argument that the documents were protected, either in whole or in part, by the deliberative process privilege." *Attorneys' Fees Opinion*, slip op. at 5. Indeed, the court ruled that the agency had properly invoked the deliberative process privilege for the two documents, *McKinley*, 789 F. Supp. 2d at 88-89; instructed the agency to determine whether segregation and disclosure of non-privileged factual information was possible, *McKinley*, slip op. at 3-4 (Aug. 26, 2011); and then granted summary judgment based on the determinations the agency made, *McKinley*, 2012 WL 1415518, at *2-3 (Jan. 25, 2012). Moreover, although the court "ultimately found that the work product privilege was too attenuated to justify blanket protection of the documents," it "noted that the assertion of the work product privilege was not wholly untenable given the documents' mention of the possibility for future litigation." *Attorneys' Fees Opinion*, slip op. at 5. In the court's view, "it was not unreasonable to assert the privilege as a basis for withholding the information." *Id.* at 6. As we have noted, McKinley does not dispute the point.

Nor was the agency recalcitrant or obdurate. It responded to McKinley's FOIA request within twenty working days by seeking clarification of the scope of the request. Just one month

later, it reported the results of its search to McKinley. And when the district court directed it to consider segregability with respect to the two documents, the agency responded within three weeks. On this record, the court's determination that the fourth "factor strongly favors against awarding fees and costs," *id*. at 6, was well within its discretion.

Given that we have found no abuse of discretion in the district court's assessment of each of the factors of the entitlement inquiry, it should come as no surprise that we likewise find no abuse in the court's final balancing. With the first and fourth factors "strongly" weighing against fees, and the remaining factors "do[ing] little to advance Plaintiff's position," we could hardly find an abuse of discretion in the court's ultimate determination that, based on a "careful balance of the relevant factors . . . Plaintiff is not entitled to receive an award of fees and costs." *Attorneys' Fees Opinion*, slip op. at 5-6.

### III

For the foregoing reasons, the judgment of the district court is

*Affirmed.*